IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SANDVIK INTELLECTUAL PROPERTY )
AB, )
                                                )
        Plaintiff, )
                                                )     2: 10-cv-00654
   v. )
                                                )
KENNAMETAL, INC., )
                                                )
        Defendant.

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently before the Court for disposition is the EXPEDITED MOTION TO COMPEL PRODUCTION OF MATERIAL AND TESTIMONY PERTAINING TO DEFENDANT'S TEXTURE COEFFICIENT TESTS AND MEASUREMENTS, with brief in support filed by Plaintiff, Sandvik Intellectual Property AB ("Sandvik") (Document Nos. 131 and 132), the brief in OPPOSITION filed by Defendant, Kennametal, Inc. ("Kennametal") (Document No. 138), the REPLY BRIEF filed by Sandvik (Document No. 143), and the SUR-REPLY IN OPPOSITION filed by Kennametal (Document No. 147). Additionally, the requested claw-back documents in question were submitted to the Court for an *in camera* review. Upon consideration of the arguments of the parties, the applicable case law, and the Court's examination of the documents, the Court will grant the Motion to Compel.

**Background**

On April 27, 2009,[1] Sandvik filed a one-count Complaint against Kennametal in which it alleged that Kennametal infringed two patents, namely U.S. Patent Nos. 5,487,625 ("the '625

---

[1] The case was originally filed in the United States District Court for the Western District of North Carolina, Asheville Division. By Order dated May 12, 2010, the case was transferred pursuant to 28 U.S.C. § 1404(a) to the Western District of Pennsylvania. *See* Document No. 41.

1

patent") and 5,654,035 ("the '035 Patent") patent.[2] Sandvik is the owner by assignee of both United States patents. The '625 Patent issued on January 30, 1996, from Application No. 159,217, filed on November 30, 1993. The '035 Patent issued on August 5, 1997, from Application No. 532,359, filed on September 22, 1995.

The '625 Patent is a product patent for a cutting tool with a specified coating with characteristics that the inventors claim make it suitable for cutting metals at high temperatures. The '035 Patent is a method patent for coating a cutting tool with at least one layer of such specified substance that involves the use of certain gases in a specified order.

Sandvik has alleged that Kennametal is infringing both patents by making and/or selling certain grades of coated cutting tools. The coatings on the products, rather than the underlying structures, are at issue.

On July 16, 2009, Sandvik filed its First Amended Complaint in which it specifically identified the following Kennametal alleged infringing products: coated cutting tools marketed under the following names and/or grades: KC9110, KC9310, KC9315, KC9320, KC9325, and KC5515 (a/k/a TN5515).

Kennametal filed an Answer to the Amended Complaint and Counterclaim and asserts the affirmative defenses of unenforceability and invalidity of both patents. Specifically, Kennametal argues that the patents-in-suit are invalid because the texture coefficient ("TC") claim term is "insolubly ambiguous," which renders the patent indefinite.

Sandvik disputes that there are "critical details" missing from the patents-in-suit and in support of its position intends to rely upon certain documents produced by Kennametal in this

---

[2] On January 31, 2011, the parties filed a Stipulation of Dismissal of Claims under U.S. Patent No. 5,654,035. This dismissal has no effect on the parties' assertions of claims and counterclaims with respect to the '625 Patent.

case. Among its rolling document productions in response to Sandvik's requests, Kennametal has produced several hundred pages of documents which pertain to its internal TC testing.

On December 17, 2010, Sandvik issued to Kennametal a notice of deposition under Rule 30(b)(6) on several topics, including Kennametal's internal TC testing. On December 28, 2010, Kennametal informed Sandvik that the 30(b)(6) deposition would not be going forward.

On January 3, 2011, counsel for the parties met whereupon Kennametal informed Sandvik that inquiry into Kennametal's internal TC testing was protected by the attorney-client privilege and/or work product doctrine. Kennametal asserted a claim of privilege on all documents pertaining to its internal TC testing of relevant product since February 2001, on the ground that such testing was done in anticipation of litigation.[3]

Sandvik disagreed strongly with Kennametal's broad assertion of privilege and work product, especially in light of Kennametal's previous production of hundreds of pages of TC-related documents.[4]

On January 7, 2011, Kennametal informed Sandvik that the TC-related documents previously produced had been inadvertently produced and requested the return or destruction of these "protected" documents pursuant to the "claw back" provision agreed upon by the parties.

Presently before the Court is a Motion to Compel in which Sandvik requests that (1) Kennametal be required to produce all internal TC testing of cutting inserts and (2) Kennametal not be permitted to "claw back" documents related to TC testing which already have been

---

[3] According to Sandvik, Kennametal has withheld in excess of 59,000 pages of documents which relate to Kennametal's internal TC testing on the basis that such testing was done in anticipation of litigation.

[4] Sandvik describes the produced TC-related documents as totaling roughly 400 pages; Kennametal describes the same documents not in reference to page number, but as 68 potentially privileged documents, of which 54 are subject to the attorney-client privilege and/or work product doctrine.

3

produced. Kennametal claims that the materials presently at issue are protected by the attorney-client privilege or the work product doctrine.[5]

**Discussion**

A.   Attorney-Client Privilege

The Court does not need to decide whether the four documents at issue are protected by the attorney client privilege as Sandvik has agreed to withdraw its motion with respect to these four documents. *See* Reply at n.6 (Document No. 143).

B.   Work-Product Doctrine

Generally, whereas the "attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice," *Genentech, Inc. v. U.S. Intern. Trade Com'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997), the work-product doctrine "protects the attorney's thought processes and legal recommendations." *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985). Documents are prepared in anticipation of litigation when "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979). The preparer's anticipation of litigation must be objectively reasonable. *Martin & Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993). Generally, a reasonable anticipation of litigation requires the existence of an identifiable specific claim or impending litigation at the

---

[5] While Kennametal has produced a privilege log for the claw back documents, it has not to the Court's knowledge produced a privilege log for the approximately 59,000 pages of documents that it has withheld from production.

4

time the materials were prepared. *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 305 (3d Cir. 1999).

> As the Federal Circuit has explained, the work product doctrine is:
>
>> designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute." Unlike the attorney-client privilege, which provides absolute protection from disclosure, work product protection is qualified and may be overcome by need and undue hardship. However, the level of need and hardship required for discovery depends on whether the work product is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not. Whereas factual work product can be discovered solely upon a showing of substantial need and undue hardship, mental process work product is afforded even greater, nearly absolute, protection.

*In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007). Information most closely related to an attorney's litigation strategy is absolutely immune from discovery, while information with a more tenuous relationship to litigation strategy might be available in circumstances evincing a substantial need or undue hardship on the part of the discovery proponent. Fed. R. Civ. P. 26(b)(3). Accordingly, information that is merely factual may not be withheld under the umbrella of work product.

The threshold determination in a case involving a claim of work product privilege is whether the material sought to be protected from discovery was prepared in anticipation of litigation. The determination of whether materials were prepared in anticipation of litigation, however, while central to the work product doctrine, eludes precision. This is especially the case in certain contexts where the discovery opponent routinely performs investigations and accumulates files even when no litigation ensues.

5

Kennametal boldly asserts that all of its TC testing and measurements, which began in 2000, were conducted in anticipation of litigation with Sandvik.[6] The record before the Court reflects that while Kennametal was aware of the Sandvik patents as early as February 2000,[7] the record reflects no evidentiary support for Kennametal's claims that in 2000 litigation with Sandvik could reasonably have been anticipated.

In addition, John J. Prizzi, former Chief Counsel for Intellectual Property of Kennametal, states that in 2000 Kennametal had in place a "procedure for periodically reviewing competitive patents for potential infringement to avoid litigation" and that the evaluation of "whether there was any potential infringement" was "part of our regular practice when competitor patents were evaluated." Prizzi Decl. ¶ 6. The Court finds that Kennametal has failed to demonstrate that any of its internal TC testing and measurements conducted in 2000 were conducted in reasonable anticipation of litigation. This evidence does not support the existence of an objectively reasonable real or imminent threat of litigation. Accordingly, the Court finds that all Kennametal internal TC testing documents generated during the time frame 2000 – February 22, 2001 do not qualify as work product and must be produced.

However, the issue of whether Kennametal must produce documents generated after February 22, 2001 is a much closer call. By letter dated February 22, 2001, Sandvik notified

---

[6] During the meet-and-confer session on January 3, 2011, Kennametal's counsel asserted the work product doctrine with regard to all of its TC testing made after receipt of a February 2001 letter from Sandvik. However, Kennametal now claims that its work product materials date to February 2000, a year before Kennametal received the Sandvik letter.

[7] *See* Declaration of John J. Prizzi, Exhibit A- email dated February 2, 2000, in which Hans-Guenter Prengel notes that "[w]ithin development activities of the CVD coating for the new P10 / P26 grades I need your help in some general issues (the background is to understand better our technical position vs newer Sandvik patents regarding our current and future CVD products)."

Kennametal that it had studied the Kennametal coated products under the KC 8050 designation and concluded that the products "seem to be coming at least within our interpretation of the scope of the claims of our US Patents 5,487,625 and 5,861,210." [8] *See* Declaration of John J. Prizzi, Exhibit E. Litigation was not mentioned in the letter. In response to the Sandvik letter, Kennametal conducted TC testings on its KC 8050 production to determine if Kennametal was in violation of the Sandvik patents. *Id.,* Exhibit H. The record before the Court does not reflect how this issue was resolved between the parties.

Approximately four years later, on January 25, 2005, Sandvik sent a cease-and-desist letter notifying Kennametal that its inserts under the KC 9325 designation meet the limitations of at least claim 1 of the '625 patent. Sandvik demanded that "Kennametal cease and desist from making, using, selling and/or offering for sale such inserts." *See* Declaration of John J. Prizzi, Exhibit L.

It appears that the internal TC testing performed after the receipt of these two letters may be factual work product documents and thus protected by the work product doctrine. However, upon a showing of substantial need and undue hardship, factual work product documents become discoverable if the documents contain operative facts relevant to issues involved in the present litigation. Fed. R. Civ. P. 26(b)(3)(A)(ii).

Kennametal contends that the patent-in-suit is fatally indefinite and thus invalid because the texture coefficient claim is "insolubly ambiguous." Kennametal has unquestionably made testing parameters a central issue on the invalidity of the subject patent-in-suit. The documents sought by Sandvik involve product testing and provide details about how Kennametal investigates, determines and evaluates characteristics of materials and products, including texture

---

[8] The Court notes that neither the Kennametal coated products under the KC 8050 designation nor the Sandvik US Patent 5,861,210 are involved in this litigation.

7

coefficients. The documents reflect tests and measurements conducted by engineers and other technical personnel; the documents do not reveal the mental impressions of an attorney. Accordingly, the Court finds that Kennametal may not withhold such information that is merely factual under the umbrella of the work product doctrine.

Accordingly, the Court finds that Sandvik has made a showing of substantial need of the internal TC testing performed by Kennametal and thus, Kennametal must produce all of its TC-testing documents in their entirety.

## Conclusion

For these reasons, the Motion to Compel all documents relating to Kennametal's internal testing of texture coefficients will be granted. Further, the 54 documents related to testing already produced by Kennametal for which it sent a claw-back letter on January 7, 2011 will be deemed beyond the scope of any attorney-client privilege or work product doctrine and are not subject to claw-back. Kennametal will be ordered to produce a witness competent to testify on Kennametal's behalf pursuant to Fed. R. Civ. P. 30(b)(6) on each of the topics identified in Plaintiff's deposition notice. Finally, Kennametal will be ordered to produce forthwith all documents and materials which relate to Kennametal's practice and knowledge of testing of texture coefficients and measurements.

An appropriate Order follows.

Mc,Verry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SANDVIK INTELLECTUAL PROPERTY AB,

    Plaintiff,

v.

KENNAMETAL, INC.,

    Defendant.

2: 10-cv-00654

## ORDER OF COURT

**AND NOW**, this 4th day of February, 2011, it is hereby **ORDERED** that the Expedited Motion to Compel Production and Testimony Pertaining to Defendant's Texture Coefficient Tests and Measurements filed by Plaintiff is **GRANTED**.

It is **ORDERED** that Sandvik's motion as to the four documents to which Kennametal asserted the attorney client privilege (Priv Log 1-3) is **DENIED AS MOOT.**

It is further **ORDERED** that the 51 remaining documents (Priv Log 4 – 54) related to testing produced by Kennametal for which it sent a claw-back letter on January 7, 2011, are hereby deemed beyond the scope of the work product doctrine, and are not subject to claw-back and may be removed from sequestration;

It is further **ORDERED** that Kennametal shall immediately produce forthwith all documents and materials which relate to Kennametal's practice and knowledge of texture coefficients testing; and

It is further **ORDERED** that Kennametal must produce a witness competent to testify on Kennametal's behalf pursuant to Federal Rule of Civil Procedure 30(b)(6) on each of the topics identified in Plaintiff's deposition notice.

It is further **ORDERED** that the parties shall submit on or before **February 11, 2001**, an agreed upon proposed Scheduling Order, which addresses the following:

    a.    the date by which Kennametal will produce the remainder of its documents and materials which related to Kennametal's practice and knowledge of texture coefficients testing;

    b.    the date on which Kennametal will produce a witness competent to testify on Kennametal's behalf pursuant to Federal Rule of Civil Procedure 30(b)(6) on each of the topics identified in Plaintiff's deposition notice; and

    c.    the date by which Sandvik will file its claim construction Reply brief.

Upon approval of the proposed Scheduling Order, the Court will reschedule the date for the claims construction hearing.

                                                          BY THE COURT:

                                                          s/ Terrence F. McVerry
                                                          United States District Court Judge

cc:    Frederick H. Colen, Esquire
        Reed Smith
        Email: fcolen@reedsmith.com

        Jeffrey G. Killian, Esquire
        Drinker Biddle & Reath
        Email: jeffrey.killian@dbr.com

        Ronald L. Grudziecki, Esquire
        Drinker Biddle & Reath
        Email: ron.grudziecki@dbr.com

        William P. Quinn , Jr., Esquire
        Morgan, Lewis & Bockius LLP
        Email: wquinn@morganlewis.com

Carrie A. Beyer, Esquire
Drinker Biddle & Reath LLP
Email: carrie.beyer@dbr.com

David W. Marston , Jr., Esquire
Morgan, Lewis & Bockius LLP
Email: dmarston@morganlewis.com

Elaine P. Spector, Esquire
Drinker, Biddle & Reath, LLP
Email: elaine.spector@dbr.com

Jeffrey J. Lopez, Esquire
Drinker Biddle & Reath LLP
Email: jeffrey.lopez@dbr.com

John D. Ferman, Esquire
Drinker Biddle & Reath, LLP
Email: john.ferman@dbr.com

Mark A. Grace, Esquire
Cohen & Grace, LLC
Email: mgrace@cohengrace.com

Daniel R. Taylor , Jr., Esquire
Kilpatrick Stockton
Email: DanTaylor@KilpatrickStockton.com

Eric G. Soller, Esquire
Pietragallo, Bosick & Gordon
Email: egs@pbandg.com

Alan G. Towner, Esquire
Pietragallo, Bosick & Gordon
Email: agt@pbandg.com

James J. Link, Esquire
Kilpatrick Stockton
Email: jlink@kilpatrickstockton.com

Jason M. Wenker, Esquire
Kilpatrick Townsend and Stockton LLP
Email: jwenker@kilpatricktownsend.com

11

Steven D. Moore, Esquire
Kilpatrick Stockton LLP
Email: smoore@kilpatricktownsend.com